IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES E. LUNDEEN, Sr., M.D.,

        Plaintiff,

   vs.                                 Civil Action 2:11-cv-484

                                    Magistrate Judge King

LANCE A. TALMADGE, *et al.*,

        Defendants.

<u>OPINION AND ORDER</u>

This action arises from plaintiff's summary suspension from the practice of medicine and surgery by the State Medical Board of Ohio. This matter is now before the Court, with the consent of the parties under 28 U.S.C. §636(c), on plaintiff's motion for default judgment, *Plaintiff's Motion for Default Judgment, FRCP 55, Pursuant to Extrinsic Fraud upon the Court Perpetrated by Defendants*, Doc. No. 16 ("*Motion for Default Judgment*"), on plaintiff's three motions for preliminary injunction and on defendants' motion to dismiss the *Complaint* pursuant to Fed. R. Civ. P. 12(b)(1) and (6). *Motion for Urgent Temporary Restraining Order, Preliminary Injunction and Hearing for same, and Permanent Injunction and Hearing for same, Against Defendants Pursuant to the May 11, 2011 Fraudulent Administrative Order of Summary Suspension of Ohio License and/or certificate to practice, License #35052257*, Doc. No. 3 ("*Motion for Preliminary Injunction*"); *Verified Motion for Preliminary Injunction, Hearing for Same, and Permanent Injunction*, Doc. No. 22 ("*Second Motion for Preliminary Injunction*"); *Plaintiff's Third Motion for Preliminary Injunction, Hearing for Same, and Permanent*

*Injunction* ("*Third Motion for Preliminary Injunction*"), Doc. No. 29;
*Defendants' Motion to Dismiss*, Doc. No. 11 ("*Motion to Dismiss*").


**I.    Background**

In his *Complaint*, which is verified, plaintiff alleges that on May
11, 2011, the State Medical Board summarily suspended plaintiff's medical
license or certification to practice medicine without first providing an
opportunity for a hearing.  *Id.* pp. 14-16.  *See also Entry of Order*,
*Exhibit* attached to *Motion to Dismiss*, Doc. No. 11-1, p. 5.  The action
was purportedly based on "Plaintiff's continued practice of medicine as
presenting danger of immediate and serious harm to the public . . . ."
*Complaint*. p. 19.  *See also Notice of Summary Suspension and Opportunity
for Hearing,* Exhibit attached to *Motion to Dismiss*, Doc. No. 11-1, pp.
7-12.  However, plaintiff characterizes these allegations as "bold faced
fraudulent statements." *Complaint*, p. 19.  The *Complaint,* filed on June
3, 2011, asserts federal claims based on procedural and substantive due
process against members of the State Medical Board in their official and
personal capacities, as well as claims based on state law.  Plaintiff
requests injunctive and monetary relief.  *Id.*[1]

On June 9, 2011, plaintiff requested a hearing before the State
Medical Board.  *Request for a Hearing & Request to Appear Before Board,*
Exhibit attached to *Motion to Dismiss*, Doc. No. 11-1, p. 2.  An
administrative hearing began on August 22, 2011, *see Second Motion for*

---

[1]Plaintiff also initiated other proceedings in state and federal court
related to his suspension and the surrounding events.  *See Lundeen v. Buehrer*,
Case No. 2:11-CV-363 (S.D. Ohio); *Lundeen v. Ridge*, Case No. 2:11-CV-430 (S.D.
Ohio); *State ex rel. Lundeen v. Whitehouse*, No. 2011-907, 951 N.E.2d 1041
(Ohio Aug. 24, 2011) (dismissing plaintiff's request for a writ of mandamus);
*Lundeen v. Ohio Bur. of Workers' Compensation*, Case No. 11-CV-4590 (Ohio Ct.
App. Franklin County) (terminated July 21, 2011).

*Preliminary Injunction*, p. 2; *Entry*, *Exhibit F* attached to *Defendants'*
*Memorandum in Opposition to Plaintiff's Second Motion for Preliminary*
*Injunction*, Doc. No. 23, and concluded on October 13, 2011. *Defendants'*
*Motion to Take Judicial Notice of Administrative Proceedings*, Doc. No.
36-1, pp. 1, 1908. The record before this Court does not indicate that
the State Medical Board has yet issued a final order.

## II.  Discussion

## A.  Motion for Default Judgment

Plaintiff asks that judgment by default be entered against
defendants because their attorney, invoking the "safe harbor" provision
of Fed. R. Civ. P. 11,[2] sought to intimidate plaintiff by demanding that
he "correct or dismiss the deficiencies" of the complaint within 21 days.
*Exhibit A*, attached to *Motion for Default*.  Arguing that defendants
failed to comply with the requirements of Rule 11 and noting that
defendants filed their *Motion to Dismiss* prior to the lapse of the 21 day
period, plaintiff contends that defendants thereby perpetrated a "massive
fraud" that warrants judgment by default. *Motion for Default Judgment*,
Doc. No. 16-1, p. 5. The Court disagrees.

The United States Court of Appeals for the Sixth Circuit has, in the
context of a motion for relief from final judgment, articulated the
elements of fraud upon a court:

> Fraud on the court consists of conduct: "1)
> on the part of an officer of the court; that 2) is
> directed to the judicial machinery itself; 3) is
> intentionally false, willfully blind to the truth,
> or is in reckless disregard of the truth; 4) is a
> positive averment or a concealment when one is
> under a duty to disclose; and 5) deceives the

---

[2]Under the "safe harbor" provision of Rule 11, a motion for sanctions
under that rule may not be filed "if the challenged paper, claim, defense,
contention, or denial is withdrawn or appropriately corrected within 21 days
after service or within another time the court sets."  Rule 11(c)(2).

3

court."

*Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010)(quoting *Carter v. Anderson,* 585 F.3d 1007, 1011 (6th Cir. 2009)).   Even accepting plaintiff's allegations of wrong-doing on the part of defendants or their counsel, which the Court does not, plaintiff has failed to establish a fraud upon the Court.   His *Motion for Default Judgment* is therefore without merit.

**B.    Motions for Preliminary Injunction**

In his motions for preliminary injunction, plaintiff asks that the Court order defendants to "void and/or vacate and/or nullify their summary suspension order of May 11, 2011 . . . ." *Motion for Preliminary Injunction*, pp. 1-2.  *See also Second Motion for Preliminary Injunction*, p. 23 (praying that the Court "issue a Preliminary Injunction staying the summary suspension order of Ohio medical license . . . of May 11, 2011 . . . ."); *Third Motion for Preliminary Injunction* ("The plaintiff respectfully seeks injunctive relief from the order of summary suspension of May 11, 2011 . . ."). Interim injunctive relief is an extraordinary remedy that should be granted only after a court has carefully considered the following four factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citing *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*), quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995)).  When considering these factors, a district court should balance each factor against the others to arrive at its

ultimate determination. *Id.* These factors are not prerequisites to injunctive relief; rather, they are factors that the Court must balance. *In re Delorean Motor Co.*, 755 F.2d at 1229; *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001) (no single factor is determinative.); *Monongahela Power Co. v. Schriber*, 322 F. Supp.2d 902, 918 (S.D. Ohio 2004)(same). However, a preliminary injunction should not issue where there is simply no likelihood of success on the merits. *Michigan State AFL-CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997).

Because, for the reasons stated *infra*, the Court concludes that defendants' *Motion to Dismiss* is meritorious and that plaintiff has not demonstrated a likelihood of success on the merits of his claims, it follows that plaintiff's motions for preliminary injunction must be denied.

## C.    Motion to Dismiss

Defendants advance the following arguments in support of their *Motion to Dismiss*:  (1) the Court should abstain from addressing the requests for injunctive relief pursuant to *Younger v. Harris*, 401 U.S. 37 (1971); (2) defendants enjoy absolute immunity under the Eleventh Amendment in connection with claims for money damages brought against them in their official capacities; and (3) defendants are immune from federal and state claims for money damages brought against them in their personal capacities.  The Court will address each argument in turn.

### (1)   Claims Against Defendants in Their Official Capacities

#### (a)   Injunctive Relief

Defendants first argue that the Court should abstain from addressing plaintiff's requests for injunctive relief, by which plaintiff seeks to abrogate the suspension of his medical license, pursuant to *Younger v.*

*Harris*, 401 U.S. 37 (1971).

The *Younger* abstention doctrine, as established and extended by the United States Supreme Court, prohibits federal courts from issuing injunctions that serve to interfere with state criminal and civil proceedings. *See Younger*, 401 U.S. at 43, 46 (addressing interference with state criminal proceedings); *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) (extending *Younger* to state civil proceedings). The doctrine also prevents federal courts from interfering with certain state administrative proceedings. *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433 n.12 (1982).

A federal court must consider three factors in determining whether abstention is appropriate: "(1) whether the underlying proceedings constitute an ongoing judicial proceeding, (2) whether the proceedings implicate an important state interest, and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge." *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008).

The first question is therefore whether the administrative proceedings initiated before the State Medical Board qualify as "an ongoing judicial proceeding" for purposes of *Younger* abstention. This Court concludes that they do. *See Watts v. Burkhart*, 854 F.2d 839,846 (6th Cir. 1988) (proceedings initiated by the Tennessee Division of Health Related Boards, an administrative agency, to summarily suspend a doctor's license to practice were judicial proceedings subject to *Younger* abstention principles). *See also Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 634 (6th Cir. 2005); *Buckwalter v. Nev. Bd. of Med. Exam'rs*, No. 2:10-CV-2034, 2011 WL 1200567, *3 (D. Nev. March 25, 2011).

6

Moreover, based on the record presently before this Court, it appears that those administrative proceedings are ongoing.[3]

The second *Younger* question is whether the proceedings implicate an important state interest. It is clear that the regulation of the practice of medicine is an important interest to the State of Ohio. *See Watts*, 854 F.2d at 846-47 ("It is readily apparent that the State of Tennessee has an important interest in protecting its citizens from the illegal and improper distribution of controlled substances and from the negligence of licensed physicians."); *see also Kalniz v. Ohio State Dental Bd.*, 699 F. Supp. 2d 966, 972 (S.D. Ohio 2010) ("[T]he regulation of the practice of dentistry is an important state interest").

The final element of the inquiry is whether plaintiff has an adequate opportunity to raise constitutional challenges in the pending state proceedings. This Court concludes that he does. Under Ohio law, a party adversely affected by an order of the State Medical Board may argue on appeal that the order is not "in accordance with law," O.R.C. § 119.12, a term that has been construed to include federal constitutional challenges. *See Macheret v. State Med. Bd. of Ohio*, 935 N.E.2d 918, 923-24 (Ohio Ct. App. 2010) (considering a federal due process challenge by a doctor whose medical license had been suspended by the State Medical Board); *Leak v. State Med. Bd. of Ohio*, No. 09AP-1215, 2011 WL 2112673, *7 (Ohio Ct. App. May 24, 2011) (considering federal due process challenge by a doctor whose medical license had been revoked by the State Medical Board); *see also Watts*, 854 F.2d at 848.

---

[3]Furthermore, should the State Medical Board issue a decision adverse to plaintiff, plaintiff may appeal from that decision to the Ohio Court of Common Pleas for Franklin County. O.R.C. §119.12.

Plaintiff seeks to avoid the application of *Younger* by relying on decisions issued in *Brown v. Day*, 555 F.3d 882 (10th Cir. 2009), and *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27 (1st Cir. 2004), which held that *Younger* abstention is inapplicable to *remedial* administrative proceedings. The Court is not persuaded by plaintiff's contention in this regard.

As a preliminary matter, plaintiff offers no explanation why the current proceedings before the State Medical Board are remedial in nature, rather than judicial or adjudicative, so it is impossible to address his argument directly. At any rate, this Court concludes that the proceedings before the State Medical Board are not remedial in nature so as to avoid application of *Younger* abstention. Plaintiff is the respondent in those proceedings, not the petitioner or the plaintiff. *Cf. Devlin v. Kalm*, 594 F.3d 893, 895 (6th Cir. 2010) (holding that *Younger* does not apply "because [plaintiff] is the plaintiff in both the federal and state proceedings") (citing *Day*, 555 F.3d at 889). In other words, the State Medical Board, which has not yet issued a final administrative order, initiated the summary suspension proceedings against plaintiff. *See Day*, 555 F.3d at 889; *see also* Ohio Rev. Code § 4731.22; *Ridgeway v. State Med. Bd. of Ohio*, Nos. 06AP-1197, 06AP-1198, 2007 WL 3072635 (Ct. App. Ohio Oct. 23, 2007) (discussing the process by which the State Medical Board enters a summary suspension and thereafter a final adjudicative order). The matter pending before the State Medical Board is "a state administrative proceeding initiated to punish the federal plaintiff for a bad act." *Day*, 555 F.3d at 891. In short, this Court rejects plaintiff's argument that *Younger* abstention is inappropriate on this basis.

8

Plaintiff also appears to argue that, because he need not exhaust state administrative remedies before seeking relief in a federal court, *Younger* abstention is inapplicable. In making this argument, plaintiff has confused *Younger* abstention, which limits in certain circumstances the the ability of a federal court to act, and the affirmative defense of exhaustion, which limits in certain circumstances a plaintiff's right to seek relief in a federal court. The failure to exhaust administrative remedies is not a valid affirmative defense in an action to vindicate federal constitutional claims. *Patsy v. Board of Regents*, 457 U.S. 496 (1982). However, where qualifying state administrative proceedings remain pending, the *Younger* doctrine nevertheless prohibits action by the federal court. *Cf. Maymo-Melendez*, 364 F.3d at 36 ("If Maymó had been summarily suspended by the Racing Administrator and no administrative proceeding had been begun, he could have gone directly to federal court to challenge his dismissal."). Administrative proceedings concerning the suspension of plaintiff's medical license are in fact ongoing. This is not a case where plaintiff elected to forgo an optional appeal and instead sought relief in federal court. The exhaustion argument advanced by plaintiff is therefore irrelevant.

In sum, this Court concludes that abstention on plaintiff's requests for injunctive relief is therefore appropriate under *Younger*.

        **(b)  Money Damages**

Defendants next argue that they enjoy absolute immunity under the Eleventh Amendment in connection with claims for monetary damages brought against them in their official capacities. Because plaintiff concedes that he "did not ask for monetary relief from the defendants in their official capacities," *Plaintiff's Response to Defendants' Motion to*

9

*Dismiss*, Doc. No. 20 at 31 ("*Response to Motion to Dismiss*"), it is unnecessary to further address defendants' Eleventh Amendment argument.

### (2)  Claims Against Defendants in Their Personal Capacities

#### (a)  Federal Claims

Defendants next argue that, to the extent that federal claims for monetary damages are asserted against them in their individual capacities, defendants enjoy absolute quasi-judicial by application of *Stump v. Sparkman*, 435 U.S. 349 (1978), as extended by *Butz v. Economou*, 438 U.S. 478 (1978).

It is well-established that a judge is absolutely immune from civil suits for monetary damages even if "the action he took was in error, was done maliciously, or was in excess of his authority" and "even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 356, 359.  Judicial immunity applies if "at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him." *Id.* at 356.  Pursuant to *Butz v. Economou*, this doctrine extends to adjudications by federal administrative agencies.  438 U.S. at 513.

This Court must also confer this quasi-judicial immunity upon a state official if that official (1) "perform[s] a traditional 'adjudicatory' function, in that he decides facts, applies law, and otherwise resolves disputes on the merits (free from direct political influence);" (2) "decide[s] cases sufficiently controversial that, in the absence of absolute immunity, he would be subject to numerous damages actions;" and (3) "adjudicate[s] disputes against a backdrop of multiple safeguards designed to protect [the defendant]'s constitutional rights." *Watts v. Burkhart*, 978 F.2d 269, 278 (6th Cir. 1992) (internal quotation

marks omitted).

The United States Court of Appeals for the Sixth Circuit has held that medical license review proceedings conducted by the Tennessee Board of Medical Examiners are adjudicatory in nature. *Id.* at 274, 275. Moreover, the necessary independence in the decision-making process is present where a state medical board is "composed entirely of professionals" and "do[es] not serve at the governor's pleasure" despite the fact that it is the governor who appoints the board's members. *Id.* at 275; *see also Bettencourt v. Bd. of Registration in Med. of Commonwealth of Mass.*, 904 F.2d 772, 783 (1st Cir. 1990) (holding that a state medical board member is independent and serves an adjudicatory function where the board member "weighs evidence, makes factual and legal determinations, chooses sanctions, writes opinions explaining his decisions, serves a set term (three years), and can be removed only for cause"). Further, "the act of revoking a physician's license . . . is likely to stimulate a litigious reaction from the disappointed physician, making the need for absolute immunity apparent." *Watts*, 978 F.2d at 278 (quoting *Bettencourt*, 904 F.2d at 783). Finally, procedural safeguards are attendant to even the summary suspension of a doctor's license to practice where the governing statute also requires that revocation proceedings "be promptly instituted and determined." *Watts*, 978 F.2d at 276 (quoting Tenn. Code Ann. § 4-5-320(c)) (emphasis omitted). The availability of judicial review of an adverse agency decision is further evidence of the procedural safeguards traditionally associated with adjudicatory functions. *See Watts*, 978 F.2d at 276.

After considering these elements in the context of the claims asserted in this case, the Court concludes that the defendant members of the State Medical Board are entitled to absolute quasi-judicial immunity

11

from liability for monetary damages in connection with plaintiff's federal claims.

First, the State Medical Board is required to decide facts and to apply law free from direct political influence. The twelve-member State Medical Board must include at least eight physicians and surgeons. O.R.C. § 4731.01. Although the Governor of the State of Ohio appoints the members of the board, "with the advice and consent of the senate," *id.*, a board member may be removed from the board, by the Governor and with the advice and consent of the Senate, only for certain enumerated reasons, including that "such officer is inefficient or derelict in discharge of his duties." O.R.C. § 3.04. Furthermore, the governor may suspend a board member during a recess of the Senate but must report that action to the Senate after the recess concludes, and the suspension will be terminated if the Senate does not, after being consulted, consent to the removal. *Id.* In short, because the board is comprised largely of physicians who may be removed only for cause, this Court concludes that the State Medical Board performs its reviews "free from direct political influence."

Second, it is clear that the State Medical Board "decide[s] cases sufficiently controversial that, in the absence of absolute immunity, [the members of the board] would be subject to numerous damages actions." As evidenced by the very pendency of this action, the act of suspending or revoking a physician's license or certificate to practice "is likely to stimulate a litigious reaction from the disappointed physician, making the need for absolute immunity apparent." *See Watts*, 978 F.2d at 278 (quoting *Bettencourt*, 904 F.2d at 783).

Third, the adjudication takes place against a sufficient background of procedural safeguards. The State Medical Board may summarily suspend

12

an individual's certificate to practice medicine if two designated members (1) determine "[t]hat there is clear and convincing evidence that an individual has violated" specified disciplinary provisions and "[t]hat the individual's continued practice presents a danger of immediate and serious harm to the public," (2) recommend suspension of the certificate, and (3) submit written allegations to the board. O.R.C. § 4731.22(G). Six members of the board must vote in favor of such a suspension. *Id.* The individual may request an adjudicatory hearing by the board, the hearing must be held "within fifteen days," and the board must "issue its final adjudicative order within seventy-five days after completion of its hearing." *Id.* If the individual does not request a hearing, the suspension remains in effect "unless reversed on appeal, until a final adjudicative order issued by the board." *Id.* As noted *supra*, an individual adversely affected by a decision of the board may appeal a suspension directly to the Court of Common Pleas for Franklin County. O.R.C. § 119.12. It is true that there is no requirement, absent a request for a hearing, that revocation proceedings "be promptly instituted and determined." *Cf. Watts*, 978 F.2d at 276 (quoting Tenn. Code Ann. § 4-5-320(c)). Nevertheless, the opportunity to request a hearing, the requirement that the opinion be issued soon after the hearing, and the opportunity to file an immediate appeal with the Court of Common Pleas provide sufficient procedural safeguards to confer absolute quasi-judicial immunity on the board members.

Plaintiff argues that the State Medical Board lacked jurisdiction over the subject matter at the time it issued its summary suspension. In particular, plaintiff argues without elaboration that "[t]he subject matter utilized by the State Medical Board of Ohio for the emergency purpose of summary suspension pertained to those under the purview of the

13

Board of Health and the Fire Marshall [sic]." *Plaintiff's Response to Motion to Dismiss*, Doc. No. 20, p.16.  Plaintiff's argument fails.

The Ohio Revised Code authorizes the State Medical Board to summarily suspend a certificate to practice if the secretary and supervising member recommend suspension following a determination that (1) "there is clear and convincing evidence that an individual has violated" standards of practice articulated in the statute and (2) "the individual's continued practice presents a danger of immediate and serious harm to the public." O.R.C. § 4731.22(G).  It is therefore clear that the State Medical Board had jurisdiction over the subject matter at the time it entered the summary suspension of plaintiff's license to practice medicine.

In short, the Court concludes that defendants are absolutely immune from liability for monetary damages in connection with plaintiff's federal claims against them.

(b)    **State Law Claims**

Under Ohio law, state agents are immune from liability for monetary damages on claims arising under state law.  O.R.C. § 9.86.  A limited exception to that rule arises if the actions of those state agents were "manifestly outside the scope of [their] office or employment or [they] acted with malicious purpose, in bad faith, or in a wanton and reckless manner."  O.R.C. § 2743.02(A)(1).  However, it is the Ohio Court of Claims that is vested with the "exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under [§ 9.86] and whether the courts of common pleas have jurisdiction over the civil action." O.R.C. § 2743.02(F).  Because plaintiff has not established that this condition precedent to his state

law claims has been met, "there is no claim under Ohio law upon which relief may be granted. . . . " *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989).  *See also Bowman v. Shawnee State University*, 220 F.3d 456, 460 n. 3 (6th Cir. 2000).

As it relates to plaintiff's state law claims for monetary damages, then, the *Motion to Dismiss* is meritorious.


**WHEREUPON** plaintiff's *Motion for Default Judgment*, Doc. No. 16, *Motion for Preliminary Injunction*, Doc. No. 3, *Second Motion for Preliminary Injunction*, Doc. No. 22, and *Third Motion for Preliminary Injunction*, Doc. No. 29, are **DENIED** and defendants' *Motion to Dismiss*, Doc. No. 11, is **GRANTED.**

**The Clerk is DIRECTED to enter FINAL JUDGMENT.**


November 21, 2011                   *s/Norah McCann King*
 (Date)                            Norah M[c]Cann King
                             United States Magistrate Judge

15